**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 10, 2009

Charles R. Fulbruge III
Clerk

No. 08-30787

BRENDA ANDERSON; CARLTON ANDERSON; BRADFORD BAKER,
Individually and on behalf of Kimberly Baker; PAULINE BAKER; MELANIE
BELL; ET AL

Plaintiffs-Appellants

v.

GEORGIA GULF LAKE CHARLES, LLC; MARK JAKEL; RANDALL E
POLK; BARRY BERNARD; RICHARD BUTTERWORTH

Defendants-Appellees
--------------------------------------------------------------------------------------------------------
LA'SHONDA ARVIE; ET AL

Plaintiffs-Appellants

v.

GEORGIA GULF LAKE CHARLES, LLC; MARK JAKEL; RANDALL E
POLK; BARRY BERNARD; RICHARD BUTTERWORTH

Defendants-Appellees
--------------------------------------------------------------------------------------------------------
MARY BAKER

Plaintiff-Appellant

v.

GEORGIA GULF LAKE CHARLES, LLC; MARK JAKEL; RANDALL E
POLK; BARRY BERNARD; RICHARD BUTTERWORTH

Defendants-Appellees
--------------------------------------------------------------------------------------------------------

LOUIS BELL; ET AL

Plaintiffs-Appellants

v.

GEORGIA GULF LAKE CHARLES, LLC; MARK JAKEL; RANDALL E POLK; BARRY BERNARD; RICHARD BUTTERWORTH

Defendants-Appellees

-----------------------------------------------------------------------------------------------------

IVEARY UPSHAW; ET AL

Plaintiffs-Appellants

v.

GEORGIA GULF LAKE CHARLES, LLC; MARK JAKEL; RANDALL E POLK; BARRY BERNARD; RICHARD BUTTERWORTH

Defendants-Appellees

-----------------------------------------------------------------------------------------------------

KATHERINE DORN, Individually and on behalf of Brittany DeSadier; ET AL

Plaintiffs-Appellants

v.

GEORGIA GULF LAKE CHARLES, LLC; MARK JAKEL; RANDALL E POLK; BARRY BERNARD; RICHARD BUTTERWORTH

Defendants-Appellees

-----------------------------------------------------------------------------------------------------

EBONY BELLARD; ET AL

Plaintiffs-Appellants

v.

GEORGIA GULF LAKE CHARLES, LLC; MARK JAKEL; RANDALL E POLK; BARRY BERNARD; RICHARD BUTTERWORTH

Defendants-Appellees

-----------------------------------------------------------------------------------------------------

No. 08-30787

NATHAN DUGAS, on behalf of Starlet Dugas; ET AL

Plaintiffs-Appellants

v.

GEORGIA GULF LAKE CHARLES, LLC; MARK JAKEL; RANDALL E POLK; BARRY BERNARD; RICHARD BUTTERWORTH; JIM LITTLE; CHARLES MCDONALD

Defendants-Appellees

---

Appeal from the United States District Court
for the Western District of Louisiana
(07-CV-1378)

---

Before BARKSDALE, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

This consolidated litigation arises out of a fire and subsequent airborne chemical emissions at the manufacturing facility of Georgia Gulf Lake Charles, LLC (Georgia Gulf) in Westlake, Louisiana, on September 17, 2006. The Plaintiffs brought suit for personal injury against Georgia Gulf and seven of its employees in Louisiana state court.[1] Georgia Gulf removed the suit to federal district court, alleging that the employees were improperly joined to defeat

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Seven actions, including the *Anderson* action, were filed by hundreds of plaintiffs asserting identical claims against Georgia Gulf and four of its supervisory or managerial employees: Mark Jakel, Randall Polk, Barry Bernard, and Richard Butterworth. An eighth action, the *Dugas* class action, contained similar allegations against the same defendants plus three additional employees: Bob DiBiano, Charles McDonald, and Jim Little. The *Dugas* plaintiffs later dismissed their claims against Bob DiBiano. All actions are currently proceeding as a consolidated action, but only these seven actions are at issue in this appeal.

diversity jurisdiction. The district court denied the Plaintiffs' motions to remand and entered summary judgment, dismissing all of the Plaintiffs' claims against Mark Jakel, Randall Polk, Barry Bernard, Richard Butterworth, Charles McDonald, and Jim Little (Employee-Defendants).

On appeal, Georgia Gulf argues that we lack jurisdiction because the district court did not properly certify entry of a final order pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Additionally, the Plaintiffs argue that the district court erred in dismissing their claims against the Employee-Defendants because (1) Georgia Gulf failed to carry its burden of proving the Employee-Defendants were improperly joined because they were not delegated duties personally owed to the Plaintiffs; and (2) the district court failed to properly apply Louisiana negligence law when determining whether the Plaintiffs had a reasonable possibility of recovery against the Employee-Defendants.

We hold that the district court properly certified entry of its final order pursuant to Rule 54(b) by demonstrating its unmistakable intent to enter partial final judgment. Thus, Georgia Gulf's motion to dismiss is denied. We further hold that the district court did not err in dismissing the Plaintiffs' personal injury claims against the Employee-Defendants. The Plaintiffs have not identified any delegation or breach of a personal duty owed to third parties by the Employee-Defendants. Accordingly, we find no reasonable basis for recovery against the Employee-Defendants and affirm the district court's ruling that they were improperly joined.

## I. Factual and Procedural Background

On September 17, 2006, a fire occurred at Georgia Gulf's vinyl chloride monomer (VCM) facility in Westlake, Louisiana, resulting in the emission of toxic chemicals into the surrounding communities where the Plaintiffs reside. The fire occurred when one of the tubes failed in Georgia Gulf's ethylene

dichloride (EDC) cracking furnace. The complete fracture of the tube occurred when the furnace was undergoing a startup procedure after being shut down for maintenance.

When the furnace was started at approximately 7:00 p.m., a technician observed that temperatures in the furnace were abnormal, so he decided to shut it down. While other technicians were in the process of closing off the individual burners in the furnace, one of them saw smoke coming out of the stack, and another reported hearing noises. Shortly thereafter, a technician observed chemical vapors coming from the furnace and reported it to Butterworth, who immediately ordered an emergency shutdown of the furnace and the rest of the unit. During the evacuation of the furnace area, the vapor cloud ignited. All the remaining units in the plant were shut down, and emergency response measures were taken pursuant to Georgia Gulf's Incident Command Procedure. Butterworth telephoned the Louisiana State Police, dialed 911 to activate the community alert system, and ensured that the alarms were sounded and the Emergency Response Team was paged. A shelter-in-place was ordered by the responding agencies. Perimeter and community air monitoring was conducted by Georgia Gulf's personnel and the Louisiana Department of Environmental Quality (LDEQ). The fire was extinguished at approximately 9:00 p.m.

The Plaintiffs filed suit in Louisiana state court against Georgia Gulf and the Employee-Defendants for personal injuries sustained as a result of the fire and chemical release. Their complaints allege that Georgia Gulf delegated responsibility for operations, maintenance, and emergency response activities to each of the Employee-Defendants personally, and that this delegation created duties of care that were owed individually by the Employee-Defendants to the Plaintiffs.[2]

---

[2] At the time of the fire, Mark Jakel was employed as Georgia Gulf Plant Manager; Randall Polk as Operations, Maintenance, and Engineering Manager; Barry Bernard as

Arguing that the non-diverse Employee-Defendants were improperly joined, Georgia Gulf removed the case to federal district court based upon complete diversity under 28 U.S.C. §§ 1332(a), 1441, and 1446.[3] The Plaintiffs timely filed motions to remand on grounds that diversity jurisdiction was lacking under § 1332(a). In response, Georgia Gulf submitted affidavits of the Employee-Defendants, in which each (1) denied having been delegated any personal duties alleged in the Plaintiffs' complaints, and (2) affirmatively stated that if Georgia Gulf had delegated any such duties, they were general administrative responsibilities. The district court adopted the magistrate judge's recommendation, denied the Plaintiffs' motions to remand, and dismissed the Plaintiffs' claims against the Employee-Defendants.

The Plaintiffs then moved the district court to certify its judgment as final and appealable pursuant to Rule 54(b) and 28 U.S.C. § 1292. The district court entered final judgment without explicitly referring to either the rule or the statute. After the Plaintiffs filed their notice of appeal, Georgia Gulf filed a motion to dismiss the appeal for lack of jurisdiction. As a threshold issue, we will first address Georgia Gulf's jurisdictional challenge as to whether the district court properly certified entry of its final order.

## II. Analysis

### A. Jurisdiction

Georgia Gulf alleges that the district court did not properly certify entry of a final order pursuant to Rule 54(b), and therefore we lack jurisdiction over this appeal. Rule 54(b) states:

---

General Maintenance Supervisor; Richard Butterworth as Shift Supervisor; Charles McDonald as Principal Engineer (Process Design); and Jim Little as Safety Specialist.

[3] Removal of the *Dugas* class action was based upon improper joinder and the Class Action Fairness Act (CAFA). The parties agree that the district court's rulings regarding CAFA are not at issue in the instant appeal, so we will not consider them.

> When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. . . .

A district court satisfies the requirements for entering an order of final judgment under Rule 54(b) "[i]f the language in the order appealed from, either independently or together with related portions of the record referred to in the order, reflects the district court's unmistakable intent to enter a partial final judgment under Rule 54(b) . . . ." *Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 908 F.2d 1218, 1220 (5th Cir. 1990) (en banc); *see also Askanase v. LivingWell, Inc.,* 981 F.2d 807, 809-10 (5th Cir. 1993). In *Kelly,* we explained that if the district court "recites Rule 54(b) in the order or grants a motion requesting entry of judgment under Rule 54(b), the court expressly incorporates the entire rule by reference and signals its conclusion that the requirements of the rule have been met and entry of partial final judgment is proper." *Kelly,* 908 F.2d. at 1220.

The Plaintiffs filed a motion to certify the district court's order as final and appealable. While the motion used the word "certify" and the court's order used the word "designate," both documents refer to making the district court's order a final and appealable judgment. The district court granted a motion requesting entry of judgment under Rule 54(b) and explicitly mentioned the Plaintiffs' motion in the court order. Under *Kelly*, the district court's action incorporated the entire rule by reference, and signaled that the requirements of the rule were met and entry of partial final judgment was proper. *See id*. Because the motion explicitly references Rule 54(b), the district court's intent is unmistakable. Georgia Gulf's motion to dismiss is therefore denied. We now turn to whether the district court erred in dismissing the Plaintiffs' claims against the individual Employee-Defendants.

## B.    Improper Joinder

"[W]hen the district court engages in an independent evaluation of the record, as here, the standard of review depends upon the issue on appeal." *Guillory v. PPG Indus., Inc.,* 434 F.3d 303, 308 (5th Cir. 2005). We review the district court's decision to deny the motion to remand de novo because it is a question of law. *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995). Similarly, we review a district court's grant of summary judgment de novo. *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 445 F.3d 841, 844 (5th Cir. 2006).

In *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568 (5th Cir. 2004) (en banc)*,* we identified the framework for examining improper joinder claims.[4] Federal law allows for state civil suits to be removed to federal courts that have original jurisdiction over the action. 28 U.S.C. § 1441(a). Suits not brought under federal law are removable "only if none of the parties in interest properly joined . . . [are] citizen[s] of the State in which such action is brought." 28 U.S.C. § 1441(b). For a defendant to remove a case based on diversity jurisdiction, "the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied." *Smallwood*, 385 F.3d at 572. A district court may not, however, exercise jurisdiction over a suit where any party has been improperly joined in order to defeat diversity jurisdiction. *Id.* "The doctrine of improper joinder rests on these statutory underpinnings, which entitle a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'" *Id.*

Improper joinder may be established by either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause

---

[4] We use the term "improper joinder" because it is more consistent with the statutory language than the term "fraudulent joinder," which has been used in the past. There is no substantive difference between the two. *See Smallwood*, 385 F.3d at 571 n.1.

of action against the non-diverse party in state court." *Id.* at 573 (citation omitted). Under the second method, if there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant, the parties have been improperly joined. *Id.* Only the second method is before this Court.

To determine a reasonable basis upon which a plaintiff may recover, the district court may (1) "conduct a Rule 12(b)(6)-type analysis," or (2) if the "plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder," the district court may "pierce the pleadings and conduct a summary inquiry." *Id.* (citations omitted). This summary inquiry allows a district court to look beyond the pleadings and consider summary judgment-type evidence. *Burden*, 60 F.3d at 217 & n.18. Discovery should be limited, and the summary inquiry should only be used to identify discrete and undisputed facts that would bar a plaintiffs' recovery against an in-state defendant; anything more risks "moving the court beyond jurisdiction and into a resolution of the merits . . . ." *Smallwood*, 385 F.3d at 573-74. During the summary inquiry, "[t]he party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Id.* at 574.

The propriety of joinder in this case is based upon the test articulated in *Canter v. Koehring Co.*, 283 So. 2d 716 (La. 1973), *superseded on other grounds by statute*, LA. REV. STAT. ANN. § 23:1032 (1998). Under *Canter*, individual liability on an employer's officer, agent, or employee may be imposed if:

> 1. The principal or employer owes a duty of care to the third person . . . breach of which has caused the damage for which recovery is sought.

> 2. This duty is delegated by the principal or employer to the defendant.

9

3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances– whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.

4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.

*Id.* at 721. "*Canter*'s four-part test is used to determine whether an employee is individually liable to third persons, even if they are not co-employees." *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 386 (5th Cir. 2009).

In this case, the magistrate judge pierced the pleadings and conducted a summary inquiry as to whether the Plaintiffs might be able to recover against the Employee-Defendants under *Canter*. The Employee-Defendants each submitted affidavits specifically denying that they intentionally released toxic chemicals, and stating that various maintenance, repair, and safety responsibilities were general administrative responsibilities that were properly delegated to qualified individuals within each department. Further, each denied having any personal knowledge that the fire was likely to occur or that the operation of equipment posed a danger to anyone. Because the Plaintiffs failed

10

to submit any contradictory evidence, the magistrate judge determined that there was no reasonable basis to predict the Plaintiffs could recover against the Employee-Defendants. We agree.

The magistrate judge identified two cases from this circuit which applied the *Canter* test to facts similar to the case at bar. In *Guillory,* the plaintiffs brought suit for injuries caused by a chemical release at PPG's facility. 434 F.3d at 307. They attempted to join the individual employee-defendants, arguing that they were corporate officers imbued with safety responsibilities under *Canter*. *Id*. at 311. We determined that there was no reasonable possibility of recovery against the employee-defendants because they were not delegated personal responsibility to enact measures to prevent the chemical release or to ensure the safety of the particular equipment that failed. *Id*. at 312-13. Specifically, the employees denied (1) any responsibility for ensuring adequate monitoring devices were in place, and (2) any knowledge of whether steps were taken to prevent additional chemical releases following previous accidents at PPG's facility. *Id*. at 312, 313 n.34. The employee-defendants further testified that functions such as ensuring the adequacy of certain monitoring devices fell within the general administrative responsibilities of the unit, rather than any individual employee. *Id*. The *Guillory* plaintiffs submitted several documents to the court, none of which mentioned the employee-defendants by name or gave any indication they had a connection to the chemical release. *Id*. at 313 n.35. This lack of contradictory evidence led the district court to properly conclude that the plaintiffs had no reasonable basis upon which to hold the employee-defendants liable and that they were improperly joined. *Id*. at 313.

In contrast to *Guillory*, we found that joinder of the employees was proper in *Ford v. Elsbury*, 32 F.3d 931 (5th Cir. 1994). In *Ford,* the plaintiffs proffered evidence that directly contradicted the testimony of an employee-defendant. *Id*. at 937-38. Elsbury, the plant manager, testified that he had no personal

11

responsibility for the safety of the plant, nor that he had any personal knowledge regarding a reactor leak that caused an explosion. *Id.* at 938-39. The evidence included accident reconstruction affidavits stating that the leak, which caused the explosion, could have been detected with proper safeguards. *Id.* at 939. One employee testified that he informed Elsbury about the leak and the unsafe working conditions it created, to which Elsbury replied, "[s]ometimes you have to overlook safety to get the job done." *Id.* Plant procedures called for a facility shutdown in the event of a leak, and Elsbury testified he had authority to do so. *Id.* Yet when a first leak was discovered, then a second, the plant continued to operate in normal fashion. *Id.* One employee testified that after he became aware of the leak, he ordered the plant to be shut down, but was overruled by Elsbury. *Id.* In light of this contradictory evidence, we found that there was at least the possibility of establishing a claim against Elsbury. *Id.*

We find that *Guillory* controls this case. The employee-defendants in *Guillory* submitted sworn affidavit and deposition testimony denying any delegation or breach of personal duty regarding the explosion, and the plaintiffs did not dispute or rebut this testimony. 434 F.3d at 313. The six Employee-Defendants in this case similarly submitted affidavits and deposition testimony that they were never delegated any personal duties. In their depositions, each of the Employee-Defendants specifically denied being personally delegated any duties to (1) implement certain design or furnace inspection criteria; (2) inspect Georgia Gulf's water deluge system; (3) revise or update Georgia Gulf's maintenance or operations procedures; or (4) inspect or conduct flow measurements on Georgia Gulf's fire monitors.

Attempting to contradict this testimony, the Plaintiffs simply recite excerpts from Georgia Gulf's operating procedures, such as: "[t]he Shift Supervisor and/or Sr. Technician have the authority to direct the activities necessary to secure the unit following an emergency shutdown with the Shift

Supervisor maintaining overall authority . . . ." These procedures do not mention any Employee-Defendant by name. The Plaintiffs repeat allegations from their complaints in an effort to prove that these Employee-Defendants were personally delegated duties by Georgia Gulf. We agree with the magistrate judge's observation that the Plaintiffs "have parsed employee job descriptions into discrete elements, hoping to lay a veneer of specificity over what are, in essence, generalized claims that the [E]mployee-[D]efendants failed to prevent the incident." These general and unsupported allegations are similar to those we disqualified in *Guillory*.

The Plaintiffs have failed to proffer competent summary judgment-type evidence that any of the Employee-Defendants breached a personal duty that caused the fire and subsequent chemical emissions. The Plaintiffs have failed to identify the "negligent, grossly negligent, and intentional acts" that allegedly caused the Plaintiffs' injuries. The self-serving testimony of the Employee-Defendants is precisely the type of evidence that we relied on in *Guillory*. 434 F.3d at 313. The Employee-Defendants did not have direct responsibility for maintaining or inspecting the tubes inside the furnace, which were activities performed by an independent contractor. Furthermore, the Employee-Defendants did not have prior knowledge that the furnace's components were in need of repair or that the attempted startup posed a risk of harm.[5] Nor is there any evidence that the Employee-Defendants contributed to this accident by

---

[5] Georgia Gulf argues that *Canter* does not allow the imposition of personal liability on managerial-level employees unless those employees have actual knowledge of an impending risk of harm. In response, the Plaintiffs cite to *Canter*'s third element, which imposes liability when the breach "results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty." 283 So. 2d at 721. The Court need not resolve this dispute because there is no evidence that the Employee-Defendants in this case knew or should have known that the tubes in the furnace might fail.

13

negligently delegating maintenance or operational duties to unqualified subordinates.

Assuming *arguendo* that Georgia Gulf had delegated individual duties to the Employee-Defendants, the evidence is insufficient to establish that they actually breached such duties. In each of their depositions, the Defendant-Employees specifically denied personal knowledge that (1) any tube in the furnace had ruptured or was going to rupture; (2) the furnace was not safe to start up; or (3) the water deluge system posed a risk of harm or was in need of repair. *Canter* simply does not impose individual employee liability under these circumstances. *See, e.g., Manning v. United Med. Corp. of New Orleans,* 902 So. 2d 406, 411-12 (La. Ct. App. 2005) (individual defendant hospital officers and directors not personally liable under *Canter* for a patient's injury where the record revealed they had no personal knowledge regarding a negligent physician or his medical work history).

Vicarious liability is not a revolving door. In certain situations, an employer may be held liable for the negligent acts of its employees, *see* LA. CIV. CODE ANN. ART. 2320 (1997), but *Canter* does not attach liability to a managerial employee absent breach of a duty personally owed by the employee to third parties. *See Canter,* 283 So. 2d at 720. The evidence has not established that these Employee-Defendants owed or breached any such duties.[6] The district

---

[6] The Plaintiffs attempt to impose liability under *Canter* by arguing that Butterworth had actual knowledge of post-incident chemical emissions from the ruptured furnace. Butterworth testified that these were not reportable emissions, and he nevertheless reported them to his shift relief and Operations Manager. The Plaintiffs have not proffered evidence indicating that Butterworth violated any personal duty in handling this matter. The Plaintiffs also argue that Butterworth and Little failed to inform the state police of all the toxic chemicals that were emitted during the fire, but they do not rebut Jakel's testimony that this information was provided on the Material Safety Data Sheet (MSDS) that was given to the state police by Georgia Gulf personnel on the night of the accident.

court correctly found no reasonable basis by which Plaintiffs could hold the individual Defendant-Employees personally liable.[7]

## III. Conclusion

The district court properly certified entry of its final order under Rule 54(b) because it demonstrated its unmistakable intent to enter partial final judgment. Because the Plaintiffs have not identified any personal duty owed to third parties by the Employee-Defendants or a breach thereof, the district court correctly dismissed the Plaintiffs' personal injury claims against them. Lastly, the district court properly applied Louisiana law in determining that the Plaintiffs had not sufficiently stated a claim. The Plaintiffs have not established a reasonable basis for recovery against the Employee-Defendants under *Canter*. Thus, we affirm the district court's ruling that they were improperly joined.

AFFIRMED; MOTION TO DISMISS DENIED

---

[7] The Plaintiffs argue that the district court erroneously relied on the negligence doctrine of *res ipsa loquitur* in making its ruling. *Res ipsa loquitur* assists a plaintiff in presenting a prima facie case of negligence when direct evidence of breach is not available. *See Cangelosi v. Our Lady of the Lake Reg'l Med. Ctr.*, 564 So. 2d 654, 665 (La. 1989). In contrast, direct evidence of delegation and breach is a crucial factor in attaching *Canter* liability. The Plaintiffs reference the submission of over 2,000 pages of documents from Georgia Gulf's own operating procedure manuals, yet none of those documents identify any personally delegated duties. Rather, they illustrate general administrative responsibilities associated with the Employee-Defendants' job functions. Though the district court did not reference *Canter* by name, it clearly acknowledged that delegation and breach of a personal duty is required before attaching employee liability under *Canter*. Because the Plaintiffs' evidence failed to demonstrate delegation or breach, the district court merely analogized the Plaintiffs' argument to that of *res ipsa loquitur*, which does not apply in the *Canter* context. This analogy does not amount to an improper application of Louisiana negligence law.